SCHOENFIELD, Appellant,

v.

NAVARRE et al., Appellees.

[Cite as *Schoenfield v. Navarre*, 164 Ohio App.3d 571, 2005-Ohio-6407.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–05–1082.

Decided Dec. 2, 2005.

572

Pamela A. Borgess and David W. Zoll, for appellant.

Barbara E. Herring, Director of Law, Mark S. Schmollinger and William H. Bracy, Senior Attorneys, for appellees.

---

SINGER, Presiding Judge.

{¶ 1} This appeal comes to us from a summary judgment issued by the Lucas County Court of Common Pleas in favor of appellees in the wrongful-death action following the suicide of Eric Schoenfield. Because we conclude that no material issues of fact remain and appellees are entitled to judgment as a matter of law, we affirm.

{¶ 2} Appellant, Wendy Schoenfield, individually and as the representative of the estate of her husband, Eric Schoenfield, filed a wrongful-death suit against appellees, Toledo Police Chief Michael J. Navarre and eight Toledo police officers. Appellant's claims were based upon incidents preceding her husband's suicide, including his unsuccessful attempt to purchase a firearm at a Meijer store at 1:30 a.m. on March 27, 2000, and subsequent questioning by police officers. Meijer's store employees alerted police after Schoenfield left, saying that he had "acted suspicious," had bloody scratches or cuts on his arms and hands, and had

wanted to purchase a powerful muzzle-loader type of rifle allegedly to use for dove hunting. Within minutes after he left the store, the police stopped Schoenfield, questioned him, and searched his car. Schoenfield explained that the scratches were caused by a cat and that he wanted to purchase the rifle for dove hunting. Although the police doubted these explanations, Schoenfield was calm and denied that he had any intention of doing harm to himself or others. After talking with Schoenfield for approximately 20 minutes, the police permitted him to leave at about 2:12 a.m., since they had no reason to further detain him.

{¶ 3} While the officers were talking with Schoenfield, one officer left the site and went to Schoenfield's home to check for possible domestic-violence crimes, including injury to his wife. Schoenfield's wife assured the officer that there had been no domestic violence, but she confirmed that the couple was having marital problems. She told the police that Schoenfield was upset and had probably punched something, causing the scratches. She also said that her husband was depressed and that she feared he might be contemplating suicide, which he had attempted in the past. Several transmissions occurred between the officer at the house and the sergeant in charge at the scene where Schoenfield was being questioned. During the final transmission, appellant requested that the officers hold her husband until she could get there. He had, however, already been released.

{¶ 4} Schoenfield checked into a motel early that morning, but switched to another motel when his wife discovered where he was. Later that morning, he purchased a gun from a K–Mart store. After making several phone calls and writing a suicide note, Schoenfield shot and killed himself.

{¶ 5} Appellant claimed that because the police failed to take her husband into custody, they had breached a duty to protect him, which ultimately caused his death. Appellees moved for and were granted summary judgment.

{¶ 6} Appellant now appeals from that judgment, arguing the following five assignments of error:

{¶ 7} "I. The trial court erred when it granted appellees' motion for summary judgment as to appellant's common law custodial duty claim [Count I], as a genuine issue of material fact exists as to whether appellee breached this duty thereby causing harm.

{¶ 8} "II. The trial court erred when it granted appellees' motion for summary judgment as to appellant's violation of policies/procedures claim [Count II], as a genuine issue of material fact exists as to whether appellees violated their policy thereby causing harm.

{¶ 9} "III. The trial court erred when it failed to recognize that appellant's claim for supervisory liability for failure to adequately train [Count III] was brought against appellee Navarre.

{¶ 10} "IV. The trial court erred when it granted appellees' motion for summary judgment as to appellant's claim for failure to adequately train [Count III], as a genuine issue of material fact exists as to whether appellees were adequately trained.

{¶ 11} "V. The trial court erred when it determined that appellees' conduct was not 'wanton' or 'reckless,' as a genuine issue of material fact exists as to whether appellees' conduct was 'wanton' or 'reckless.' "

{¶ 12} We will address appellant's first and fifth assignments of error together. In her first assignment of error, appellant argues that the trial court erred in granting summary judgment as to her common-law custodial-duty claim. In her fifth assignment of error, she argues that an issue of fact remained as to whether appellees' actions were "wanton" or "reckless."

{¶ 13} The standard of review of a grant or denial of summary judgment is the same for both a trial court and an appellate court. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198. Summary judgment will be granted if "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of facts, if any, * * * show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Civ.R. 56(C).

██ {¶ 14} The Political Subdivision Tort Liability Act, as codified in R.C. Chapter 2744, generally provides that political subdivisions and their employees are immune from liability for alleged tort claims. R.C. Chapter 2744 was the General Assembly's response to the judicial abrogation of common-law sovereign immunity. *Wilson v. Stark Cty. Dept. of Human Serv.* (1994), 70 Ohio St.3d 450, 453, 639 N.E.2d 105, citing *Franks v. Lopez* (1994), 69 Ohio St.3d 345, 347, 632 N.E.2d 502. Thus, the primary statutory purpose of R.C. Chapter 2744 is the preservation of the financial stability of political subdivisions. Id. Consequently, any common-law duty formerly imposed upon employees of a political subdivision must be analyzed by the application of R.C. Chapter 2744, which provides for a three-tiered analysis to determine whether a political subdivision is immune from liability for tort claims. *Colbert v. Cleveland,* 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, at ¶ 7; *Cater v. Cleveland* (1998), 83 Ohio St.3d 24, 28, 697 N.E.2d 610.

██ {¶ 15} First, pursuant to R.C. 2744.02(A)(1), a court must initially find political subdivisions immune from liability incurred in performing either a

governmental or proprietary function. *Colbert*, supra. The immunity afforded by R.C. 2744.02(A)(1) is not absolute, however, but is subject to the five exceptions contained in R.C. 2744.02(B). Id. The second tier of the analysis requires a determination of whether any of these exceptions apply. *Cater*, supra, 83 Ohio St.3d at 28, 697 N.E.2d 610; *Colbert*, supra, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, ¶ 8. Finally, if an exception applies, the court will consider the third tier, i.e., whether any of the R.C. 2744.03 defenses against liability require the court to reinstate immunity. Id. at ¶ 9; *Cater*, supra, 83 Ohio St.3d at 28, 697 N.E.2d 610.

{¶ 16} The broad immunity conferred on political subdivisions in R.C. 2744.02(A)(1) separates the functions of the political subdivisions into two categories, governmental and proprietary. R.C. Chapter 2744, with exceptions, immunizes those municipal functions that are classified as "governmental." *Garrett v. Sandusky* (1994), 68 Ohio St.3d 139, 140, 624 N.E.2d 704. Police services are considered a governmental function. R.C. 2744.01(C)(2)(a); *Fitzpatrick v. Spencer*, 2d Dist. No. 20067, 2004-Ohio-1940, 2004 WL 829945, at ¶ 11. Furthermore, except as specifically provided in R.C. 2744.02(B)(1)-(5), with respect to government functions, a political subdivision retains its cloak of immunity stemming from an employee's negligent or reckless acts. *Wilson*, supra, 70 Ohio St.3d 450, at 452, 639 N.E.2d 105.

{¶ 17} R.C. 2744.03(A)(6) further states that employees of a political subdivision are also immune from liability unless one of the following applies:

{¶ 18} "(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;

{¶ 19} "(b) The employee's acts or omissions were with malicious purpose, in *bad faith, or in a wanton or reckless manner;*

{¶ 20} "(c) Civil liability is expressly imposed upon the employee by a section of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, because that section provides for a criminal penalty, because of a general authorization in that section that an employee may sue and be sued, or because the section uses the term 'shall' in a provision pertaining to an employee." (Emphasis added.)

{¶ 21} In this case, appellant's claims were based upon conduct by police officers that was within the scope of their employment. In our view, even presuming that a common-law "custodial duty" may have been previously applicable to this case, such claims have been absorbed into and superseded by the immunity statutes of R.C. Chapter 2744. Therefore, since they were performing a governmental function, the police department and its chief and officers are

immune from liability unless evidence is presented that they acted outside the scope of their employment or "with malicious purpose, in bad faith, or in a wanton or reckless manner."

{¶ 22} "Malicious purpose" has been defined as the "willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through * * * unlawful or unjustified" conduct. *Cook v. Hubbard Exempted Village Bd. of Edn.* (1996), 116 Ohio App.3d 564, 569, 688 N.E.2d 1058. "Bad faith" implies more than mere bad judgment or negligence. Id. It connotes a "dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." *Jackson v. McDonald* (2001), 144 Ohio App.3d 301, 309, 760 N.E.2d 24.

{¶ 23} One acts recklessly " 'if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.' " *Jackson v. Butler Cty. Bd. of Cty. Commrs.* (1991), 76 Ohio App.3d 448 454, 602 N.E.2d 363, quoting *Thompson v. McNeill* (1990), 53 Ohio St.3d 102, 104–105, 559 N.E.2d 705. "Wanton" conduct is the complete failure to exercise any care whatsoever. *Fabrey v. McDonald Village Police Dept.* (1994), 70 Ohio St.3d 351, 356, 639 N.E.2d 31. However, mere negligence will not be construed as wanton misconduct in the absence of evidence establishing " 'a disposition to perversity on the part of the tortfeasor' "; the actor must be aware that his conduct will probably result in injury. Id., quoting *Roszman v. Sammett* (1971), 26 Ohio St.2d 94, 97, 55 O.O.2d 165, 269 N.E.2d 420.

{¶ 24} Generally, issues regarding malice, bad faith, and wanton or reckless behavior are questions presented to the jury. *Fabrey,* supra, 70 Ohio St.3d at 356, 639 N.E.2d 31. However, the standard for showing such conduct is high. Id. As a result, summary judgment is appropriate in instances where the alleged tortfeasor's actions show " 'that he did not intend to cause any harm * * *, did not breach a known duty through an ulterior motive or ill will, [and] did not have a dishonest purpose.' " *Fox v. Daly* (Sept. 26, 1997), 11th Dist. No. 96–T–5453, 1997 WL 663670, quoting *Hackathorn v. Preisse* (1995), 104 Ohio App.3d 768, 772, 663 N.E.2d 384.

{¶ 25} In this case, the police responded to the call from Meijer's employees, who were concerned about appellant's attempt to purchase a gun. Contrary to appellant's claims, the police had received training and were knowledgeable about and looked for potential suicidal ideations when evaluating Schoenfield's actions and responses. The police observed that appellant had minor scratches on the outside of his hands, but considered them to be superficial

and not an indicator of intent to seriously harm himself. The police accepted appellant's explanation that Schoenfield had probably punched something, which was his habit when he was upset. Although appellant indicated that he had attempted suicide in the past, Schoenfield himself did not display to the police any overt signs that he intended to kill himself. In fact, at the start of the investigation, Meijer's employees and the police initially suspected that he possibly intended to harm someone else.

{¶ 26} The police searched Schoenfield's car and engaged him in conversation for approximately 20 minutes, asking pertinent questions in a effort to discern any serious problems with his mental state. Despite acknowledging that he was upset over some marital problems, Schoenfield appeared calm and rational, and he did not exhibit any behavior that was criminal or that indicated an intent to harm himself. The police determined that he was not under the influence of drugs or alcohol. He was not confrontive or violent. Regardless of whether the officers had undergone intensive training in recognizing suicidal persons, their actions indicate reasonable efforts to evaluate and discern whether Schoenfield had any intention to harm himself or others. Schoenfield's actions and responses were consistent with those of someone who was not suicidal, but was simply angry or upset after having a fight with his wife.

{¶ 27} Although Schoenfield's suicide was very tragic, nothing in the record demonstrates obvious signs of what his intentions were or that the police failed to act appropriately under the circumstances presented. Even presuming that the police made an error in judgment and were negligent, which we are not, that would be insufficient, as a matter of law, to rebut the presumption of immunity. After a thorough review of the record, we can find nothing that would indicate that the police acted with an intent to harm, with an ulterior motive or ill will, or that they intentionally violated any known duty. Therefore, since appellant failed to present any evidence that the department, the police chief, or the officers acted with malicious purpose, in bad faith, or in a wanton or reckless manner, the police department and officers were immune from suit. Consequently, since no material facts remain in dispute and appellees were entitled to judgment as a matter of law, the trial court properly granted summary judgment.

{¶ 28} Appellant's first and fifth assignments of error are not well taken. We find that her second, third, and fourth assignments of error are moot.

{¶ 29} The judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.

Judgment affirmed.

PIETRYKOWSKI and PARISH, JJ., concur.