[Cite as *O'Farrell v. Harlem Twp. Bd. of Trustees*, 2019-Ohio-1675.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| SHANE O'FARRELL, | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff - Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| HARLEM TOWNSHIP BOARD OF TRUSTEES, | : | Case Nos. 18 CAH 08 0059 |
| ET AL., | : | 18 CAH 08 0062 |
| | : | |
| Defendants - Appellants | : | O P I N I O N |

CHARACTER OF PROCEEDING: Appeal from the Delaware County
Court of Common Pleas, Case Nos.
17 CV H 05 0303

JUDGMENT: Affirmed

DATE OF JUDGMENT: May 2, 2019

APPEARANCES:

For Plaintiff-Appellee

WALTER J. MCNAMARA
ROBERT K. DICUCCIO
Madison & Rosan, LLP
39 East Whittier Street
Columbus, Ohio 43206

For Defendants-Appellants
Harlem Twp. Bd of Trustees, Jerry Paul,
David Jackson, and Carl Richison

MICHAEL J. VALENTINE
KEONA R. PADGETT
Reminger Co., LPA
200 Civic Center Drive, Suite 800
Columbus, Ohio 43215

For Defendants John O. Parrish and
Del-Car Auto Parts, Inc.

SCOTT M. GORDON
82 North Franklin Street
Delaware, Ohio 43015

*Baldwin, J.*

{¶1}   Defendants-appellants Harlem Township Board of Trustees, Jerry Paul, David Jackson and Carl Richison appeal from the July 30, 2018 Judgment Entry of the Delaware County Court of Common Pleas denying their Motion for Summary Judgment.

STATEMENT OF THE FACTS AND CASE

{¶2}   Plaintiff-appellee Shane O' Farrell resides at 5828 State Route 605 in Westerville, Ohio and has resided there for six years. There is a house located on the property as well as a three car garage, a 1,600 foot pole building, a wood barn and some other smaller buildings. Appellee's father, Michael O'Farrell, previously owned the property.

{¶3}   Appellee's property is zoned agricultural residential (AR-1) and is not zoned commercial. Pursuant to the Harlem Township Zoning Resolution, the following are prohibited uses for land zoned  Agricultural Residential: outdoor storage of junk motor vehicles for a period exceeding fourteen consecutive days and trash, refuse, or discarded material which create an eyesore, hazard, or nuisance to the neighborhood or general public.

{¶4}   Appellee buys, sells and trades antiques and "car stuff" from his home. Appellee's Deposition at 10.  He buys signs for restaurants among other items.  Appellee has not filed tax returns since 2002.

{¶5}   On January 22, 2014, the Harlem Township Board of Trustees voted and passed a Resolution for the abatement of the nuisance on appellee's property.  In February of 2014, a letter written by Jon Trainor, the Zoning Inspector, was sent to appellee's father, who was then the owner of the property, regarding the Nuisance

Abatement Resolution with regard to the disabled vehicles and other items located on the property. A copy of the resolution was included with the letter. The letter stated that the Resolution called for specified items to be removed or abated within thirty days of the date the letter.  The letter further stated that all vehicles stored outside on the property had to be licensed and registered or removed. Appellee testified that he did not know about the letter or about the 2014 resolution calling for the abatement of items that were contained on the subject property and that his father never discussed the matter with him.

{¶6}   A second Resolution for the abatement of the property was voted on and passed on April 9, 2014. A copy of the Resolution was allegedly sent to appellee, who then owned the property, by certified mail along with an April 9, 2014 letter from the Zoning Inspector stating that all specified items had to be removed or abated from the property by April 21, 2014 and all vehicles outside needed to be licensed and register or removed.  The Resolution was rewritten on April 23, 2014, giving appellee additional time to abate the nuisance. Such Resolution was sent to appellee via certified mail, but was returned unclaimed.

{¶7}   In 2015, appellee had approximately eight cars on his property and not all of them were licensed or had current tags.  He was also storing building materials such as lumber, cinder blocks, windows, plumbing supplies, drywall, recyclable materials such as aluminum, brass, and copper, electric motors; wire; antiques such as cast iron legs, buffets and farm machinery; toys for his daughter;  and parts for the cars that he fixed. The cars were stored in his garage, pole building and backyard while the building materials were stored in the large building, the garage or the front porch of the house.

Appellee stored the recyclable materials in the pole building, in two little buildings that his father built and in the backyard. The antiques were stored in the wood barn and backyard.

{¶8}    According to appellee, the first contact that he had with anyone from zoning or the township regarding cleaning up the property was in 2013. At the time, appellee's father was the owner of the property.   In 2013, the prior Harlem Township Zoning Inspector visited him in his front yard and was "curious what I was doing with the front porch." Appellee's' Deposition at 26. Appellee was removing the lattice on the porch and enclosing the porch to make a room. Approximately six month later, the same person spoke with appellee in appellee's front yard    and suggested that appellee fence his property. In 2014, appellee spoke with Jon Trainer, the current Zoning Inspector, in his front yard about cleaning up his property. Appellee testified that it was suggested that he put his stuff behind a fence. About a month or two later, the two of them spoke again in appellee's front yard. Trainer, according to appellee, indicted that they had received complaints about appellee's property from neighbors and people driving by and again suggested that appellee put up a fence.  Appellee's neighbors also complained directly to him once or twice in late 2013 and early 2014.

{¶9}    Appellee had a third conversation with Jon Trainor in 2014 in appellee's front yard.  When asked what was discussed, appellee testified as follows:

> The same thing, a little bit more pressed upon can we shrink some stuff down, it's starting to get bigger and more noticeable and if I just move stuff inside buildings and move stuff behind the fence out of sight then the township trustees won't have an issue with it. And I told them I'll start making progress.

Appellee's Deposition at 34.

{¶10} They two also discussed one truck that was untagged.  Appellee testified that he started moving items into buildings and out of sight from the road and moved the untagged vehicle behind the fence.  Appellee had five or six visits from Jon Trainor in 2014 who asked him what he was doing with the stuff and whether he was running a salvage operation.   Appellee retained an attorney.

{¶11} Another Resolution was adopted in April of 2015 and is alleged to have been sent by certified mail to appellee as well as being left, along with an April 10, 2015 letter from the Zoning Inspector, on the property. The letter informed appellee that on June 1, 2015, a salvage company would remove any and all inoperable/unlicensed vehicles on the property and any debris still on the property.

{¶12} In the spring of 2015, complaint notices were left at appellee's house. The notices were taped on the door of appellee's house and left on cars and indicated that appellee was not in compliance.  Appellee testified that prior to 2015, when Trainor would come, he would come with notices regarding cleaning up the property.  In the summer of 2015, appellee had a conversation with Jon Trainor in the front yard about complaints that the township had received. Trainor told appellee that he had to tag his vehicles because they were outside. At that point, appellee had six or seven vehicles outside and not all of them were operable. Nor did appellee drive all of them.  Appellee testified that he continued moving stuff into buildings and purchased more fencing to complete the property line.

{¶13} Jon Trainor met with appellee again in July of 2015. Prior to this visit, appellee had received another round of notices notifying him that he had a specified

number of days before the township was going to come and abate the nuisance and "basically take my stuff." Appellee's Deposition at 47. The notices were left on the windshield of his car, in his mailbox and in his truck. A week or so later, Jon Trainor and the Fire Chief met appellee at appellee's property and appellee told them to "get the F" off his property. Appellee' Deposition at 48. The two then left.

{¶14} On August 20, 2015, a fourth Resolution for the abatement of the nuisance on the property was passed. The Resolution was sent to appellee via certified mail on August 21, 2015, but was unclaimed. A copy of the Resolution was left on appellee's property. Pursuant to the Resolution, appellee had fourteen days to remove disabled vehicles and thirty days to remove furniture, appliances, tools, equipment, and/or junk or debris in the yard. On August 21, 2015, Jon Trainor left a handwritten note to appellee stating that he had 14 days to remove unlicensed or inoperable vehicles or place them inside a building and thirty days to remove or store in a building everything else. The letter, which appellee admitted to receiving, further stated that there were "No Compromises. No Negotiation."

{¶15} Via a letter dated September 2, 2015 from Jon Trainor to appellee, Trainor informed appellee that he, appellants, the Delaware County Sheriff and a towing company would be on appellee's property to remove any vehicle that was inoperable or unregistered/tagged from appellee's property on September 4, 2015. The letter was left in various places on appellee's property, although appellee did not recall ever seeing such letter.

{¶16} On the morning of September 4, 2015, township representatives had four of appellee's vehicles towed, all of which appellee claimed were licensed and had current

tags. Appellee did not remember being offered the chance to retrieve any personal items out of the vehicles before they were towed, but testified that it could have happened. Appellee admitted that prior to the removal of the vehicles, he had received a number of notices from appellant warning him that unless he cleaned up his property, there would be abatement proceedings. He testified that while he was aware of the notices, he was unaware of "what exactly they were trying to take and remove and which items. That was confusing." Appellee's Deposition at 62. Appellee testified that after the vehicles were towed, there was not any offer made by the township to enable him to reclaim the vehicles. He further testified that he was told that to get the vehicles back, he would have to sign an agreement to waive any legal claim against the township defendants for removing them. Appellee refused to sign. Approximately a week after they took his vehicles, the township came onto appellee's property with a junk removal businesses to get estimates for removing property.

{¶17} On September 25, 2015, a letter addressed to appellee from Jon Trainor was allegedly hand-delivered by Trainor. Trainor, in a written notation on such letter, indicated that he saw appellee open and read the letter. The letter stated that a significant amount of time had passed for abatement to occur, but that it had not and that "[a]ny items delineated by the [August 20, 2015] Resolution that are not stored in a permanent structure or permitted accessory building will be removed. Temporary structures made of corrugated metal or other materials that have not received accessory building zoning permits from Harlem Township or appropriate permits and inspections from Delaware County must be removed." Appellee, during his deposition, indicated that he 'might" have received such letter.

**{¶18}** On or about October 5, 2015, township representatives visited appellee's property again and removed items after cutting through a fence. Appellee claims that ten truckloads of items were removed that day and that antiques and five pieces of medical equipment were taken even though they were inside of buildings.

**{¶19}** On May 9, 2017, appellee filed a complaint against appellant Harlem Township Board of Trustees and appellants Jerry Paul, David Jackson and Carl Richison, the individual trustees for trespass, conversion, declaratory judgment pursuant to R.C. 2721.03, violation of 42 U.S.C. Section 1983, violation of due process under Article I, Section 16 of the Ohio Constitution, and negligence. Appellee, in his complaint, alleged that appellants violated his constitutional rights when his property was taken without due process and that their acts were undertaken with malice, in bad faith, and in a wanton, reckless manner. Appellee also named Del-Car Auto Parts, Inc. and John O. Parrish dba Del-Car Salvage as defendants, although he did not seek a declaratory judgment against them.   Appellants filed an answer to the complaint on June 1, 2017 and Del-Car Auto Parts, Inc. and John O. Parrish dba Del-Car Salvage filed an answer, counterclaims and cross-claims on June 12, 2017. An amended complaint was filed on July 13, 2017.

**{¶20}** On March 26, 2018, appellants filed a Motion for Summary Judgment on appellee's complaint and a separate Motion for Summary Judgment on the cross-claims filed by the co-defendants. Del-Car Auto Parts, Inc. and John O. Parrish dba Del-Car Salvage filed a Motion for Summary Judgment on March 27, 2018.   Appellee filed a memorandum in opposition to the March 26, 2018 motion on May 9, 2018 and a memorandum in opposition to the other motion on the same date.

**{¶21}** As memorialized in a Judgment Entry filed on July 30, 2018, the trial court denied the Motion for Summary Judgment filed by appellants on appellees' complaint. Pursuant to a Judgment Entry filed on June 21, 2018, the trial court had granted appellant's Motion for Summary Judgment on the cross-claims, but denied the March 27, 2018 Motion for Summary Judgment filed by Del-Car Auto Parts, Inc. and John O. Parrish.

**{¶22}** On August 23, 2018, appellants filed a Notice of Appeal, appealing from the trial court's July 30, 2018 Judgment Entry. Their appeal was assigned Case No. 18 CAH 08 0059. On August 27, 2018, appellee filed a Notice of Appeal, appealing from the trial court's July 21, 2018 Judgment Entry. The appeal was assigned Case No. 18 CAH of 0062. On October 24, 2018, appellee's cross appeal against Del-Car Auto Parts, Inc. and John O. Parrish was dismissed.

**{¶23}** Appellants appeal the denial of their Motion for Summary Judgment based, in part, upon R.C. 2744.02(C), which provides that "an order that denies a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as provided in this chapter or any other provision of the law is a final order". But appellate review under R.C. 2744.02(C) is limited to the denial of immunity. *Nagel v. Horner,* 162 Ohio App.3d 221, 2005–Ohio–3574, 833 N.E.2d 300, ¶ 21 (4th Dist.). Accordingly, the portion of the judgment entry denying appellants' Motion for Summary Judgment based on immunity is a final appealable order. Thus, a party may not raise other alleged errors concerning the denial of summary judgment.

**{¶24}** Appellants set forth the following assignments of error.

{¶25} "I. THE TRIAL COURT ERRED BY RELYING ON IMPROPER SUMMARY JUDGMENT EVIDENCE."

{¶26} "II. THE TRIAL COURT ERRED BY DENYING POLITICAL SUBDIVISION IMMUNITY TO THE HARLEM TOWNSHIP BOARD OF TRUSTEES, JERRY PAUL, DAVID JACKSON, AND CARL RICHISON BECAUSE THEY ARE ENTITLED TO A GENERAL GRANT OF IMMUNITY, NONE OF THE EXCEPTIONS UNDER R.C. 2744.02(B) APPLY TO BAR IMMUNITY, AND, EVEN IF AN EXCEPTION APPLIES, AT LEAST TWO DEFENSES ESTABLISH NON-LIABILITY."

{¶27} "III. THE TRIAL COURT ERRED BY DENYING SUMMARY JUDGMENT ON THE TORT CLAIMS FOR REASONS INDEPENDENT OF POLITICAL SUBDIVISION IMMUNITY SINCE MR. O'FARRELL CANNOT ESTABLISH THE ELEMENTS OF THESE CLAIMS."

{¶28} "IV. THE TRIAL COURT ERRED BY DENYING SUMMARY JUDGMENT ON MR. O'FARRELL'S DUE PROCESS CLAIMS UNDER 42 U.S.C. 1983 AND THE OHIO CONSTITUTION SINCE THESE CLAIMS FAIL FOR MULTIPLE REASONS."

{¶29} 'V. MR. O'FARRELL'S REQUEST FOR DECLARATORY JUDGMENT FAILS AS A MATTER OF LAW AND SHOULD HAVE BEEN DISMISSED BY THE TRIAL COURT."

II

{¶30} Appellants, in their second assignment of error, argue that the trial court erred in denying their Motion for Summary Judgment on appellee's tort claims because they were entitled to statutory immunity under R.C. Chapter 2744.

**{¶31}** Summary Judgment motions are to be resolved in light of the dictates of Civ.R. 56. Said Civ.R. 56 was reaffirmed by the Supreme Court of Ohio in *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 448, 1996-Ohio-211, 663 N.E.2d 639:

> Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379, citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.

**{¶32}** As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 506 N.E.2d 212 (1987).

**{¶33}** As explained by this court in *Leech v. Schumaker,* 5th Dist. Richland No. 15CA56, 2015-Ohio-4444, ¶ 13:

> It is well established the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265(1986).The standard for granting summary judgment is delineated in

*Dresher v. Burt* (1996), 75 Ohio St.3d 280 at 293: "* * * a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." The record on summary judgment must be viewed in the light most favorable to the opposing party. *Williams v. First United Church of Christ* (1974), 37 Ohio St.2d 150.

{¶34} Appellants contend that they were entitled to immunity on appellee's tort claims under R.C. Chapter 2744. In *Greene County Agricultural Society v. Liming*, 89 Ohio St.3d 551, 556–557,2000-Ohio-486, 733 N.E.2d 1141, the Supreme Court of Ohio explained the three tier analysis required for determining if sovereign immunity applies:

R.C. Chapter 2744 sets out the method of analysis, which can be viewed as involving three tiers, for determining a political subdivision's immunity from liability. First, R.C. 2744.02(A)(1) sets out a general rule that political subdivisions are not liable in damages. In setting out this rule, R.C. 2744.02(A)(1) classifies the functions of political subdivisions into governmental and proprietary functions and states that the general rule of immunity is not absolute, but is limited by the provisions of R.C. 2744.02(B), which details when a political subdivision is not immune. Thus, the relevant point of analysis (the second tier) then becomes whether any of the exceptions in R.C. 2744.02(B) apply. Furthermore, if any of R.C. 2744.02(B)'s exceptions are found to apply, a consideration of the application of R.C. 2744.03 becomes relevant, as the third tier of analysis.

{¶35} As an initial matter, we note that appellant Harlem Township is a political subdivision under R.C. 2744.01(F) which  defines a political subdivision as including a township, and that the remaining appellants were employees of the political subdivision. Revised Code 2744.02(A)(1) states, in part: "Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." An "employee" is defined by R.C. 2744.01(B) as "an officer, agent, employee, or servant * * * who is authorized to act and is acting within the scope of the officer's, agent's, employee's, or servant's employment for a political subdivision."

{¶36} Enforcement of zoning laws is in the nature of a governmental function. See *Helfrich v. City of Pastakula,* Licking App. No. 02CA38, 2003-Ohio-847. See also *State ex rel. Scadden,* 10th Dist. Franklin App. No. 01AP-800, 2002-Ohio-1352, 2002 WL 452472, citing *City of Columbus v. Bazaar Mgmt., Inc,* 10th Dist.  Franklin App. No. 82AP 33, 1983 WL 3312 (Jan. 6, 1983). Abatement of a public nuisance is a governmental function. See *Maluke v. Lake Twp.* 5th Dist. 2012CA00001, 2012–Ohio–3661. Thus, we find that appellants were engaged in a governmental function in this case.

{¶37} The next issue for consideration is whether or not any of the exceptions to immunity found in R.C. 2744.02(B) apply.  R.C. 2744.02(B) states as follows:

{¶38} (B) Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:

{¶39} (1) Except as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority. The following are full defenses to that liability:

{¶40} (a) A member of a municipal corporation police department or any other police agency was operating a motor vehicle while responding to an emergency call and the operation of the vehicle did not constitute willful or wanton misconduct;

{¶41} (b) A member of a municipal corporation fire department or any other firefighting agency was operating a motor vehicle while engaged in duty at a fire, proceeding toward a place where a fire is in progress or is believed to be in progress, or

answering any other emergency alarm and the operation of the vehicle did not constitute willful or wanton misconduct;

{¶42} (c) A member of an emergency medical service owned or operated by a political subdivision was operating a motor vehicle while responding to or completing a call for emergency medical care or treatment, the member was holding a valid commercial driver's license issued pursuant to Chapter 4506. or a driver's license issued pursuant to Chapter 4507. of the Revised Code, the operation of the vehicle did not constitute willful or wanton misconduct, and the operation complies with the precautions of section 4511.03 of the Revised Code.

{¶43} (2) Except as otherwise provided in sections 3314.07 and 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions.

{¶44} (3) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads, except that it is a full defense to that liability, when a bridge within a municipal corporation is involved, that the municipal corporation does not have the responsibility for maintaining or inspecting the bridge.

{¶45} (4) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in

connection with the performance of a governmental function, including, but not limited to, office buildings and courthouses, but not including jails, places of juvenile detention, workhouses, or any other detention facility, as defined in section 2921.01 of the Revised Code.

**{¶46}** (5) In addition to the circumstances described in divisions (B)(1) to (4) of this section, a political subdivision is liable for injury, death, or loss to person or property when civil liability is expressly imposed upon the political subdivision by a section of the Revised Code, including, but not limited to, sections 2743.02 and 5591.37 of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon a political subdivision, because that section provides for a criminal penalty, because of a general authorization in that section that a political subdivision may sue and be sued, or because that section uses the term "shall" in a provision pertaining to a political subdivision.

**{¶47}** Appellee does not argue that any of the exceptions applies, but rather argues that appellants are not entitled to immunity because the individual trustees acted with malicious purpose in bad faith and in a wanton, reckless manner.

**{¶48}** R.C. 2744.03(A)(6) provides that an employee is immune from liability unless one of the following applies:

**{¶49}** (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;

**{¶50}** (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner.

**{¶51}** "Malicious purpose" is the "willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through * * * unlawful or unjustified conduct." *Schoenfield v. Navarre*, 164 Ohio App.3d 571, 2005–Ohio–6407, 843 N.E.2d 234 at paragraph 22.  (6th Dist.). "Bad faith" connotes a "dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." *Id.* "Wanton misconduct" is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is a great probability that harm will result. *Anderson v. City of Massillon*, 134 Ohio St.3d 380, 2012–Ohio–5711, 983 N.E.2d 266 at paragraph 33. . The Supreme Court of Ohio clarified the recklessness standard in *Anderson v. City of Massillon*, 134 Ohio St.3d 380, 2012–Ohio–5711, 983 N.E.2d 266, and stated at paragraph 34, "reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct."

*{¶52}* Generally, issues regarding malice, bad faith, and wanton or reckless behavior are questions presented to the jury. *Schoenfield v. Navarre*, 164 Ohio App.3d 571, 2005–Ohio–6407, 843 N.E.2d 234 at paragraph 24. (6th Dist.). However, where the record lacks evidence demonstrating that the political subdivision employee acted in such a manner, the trial court correctly grants summary judgment. *Id.* Therefore, a trial court may not grant summary judgment on the basis of R.C. 2744.03(A)(6) immunity unless reasonable minds can only conclude that the employee did not act with malicious purpose, in bad faith, or in a wanton or reckless manner. If reasonable minds could

disagree on these issues, a court may not grant the employee summary judgment based on statutory immunity. *Id.*

**{¶53}** In the case sub judice, there was evidence presented by appellee that the Zoning Inspector misled appellee by telling appellee that if he tagged his vehicles and placed items behind a fence or inside a building, appellants would not remove his property. Appellee also points to an August 21, 2015, handwritten note from Jon Trainor to appellee stating that appellee had 14 days to remove unlicensed or inoperable vehicles or place them inside a building and thirty days to remove or store in a building everything else. The letter, which appellee admitted to receiving, further stated that there were "No Compromises. No Negotiation." In addition, appellee, during his deposition, testified that he heard appellant Jerry Paul ask appellant David Jackson, when they were in appellee's backyard, if he would be confiscating a pipe wrench belonging to appellee in order to use it on his farm. Appellee testified that once they noticed that he was there, David Jackson dropped the pipe wrench onto the ground. Finally, as noted by the trial court, appellants did not personally notify appellee of the date and time of the meeting at which they proposed resolution would be discussed and failed to follow statutory service procedures under R.C. 505.871, which governs notice for **removal of junk motor vehicles in unincorporated territory,** before coming on the premises and removing appellee's property.

**{¶54}** We concur with the trial court that "[w]hether these failures were motivated by malice or bad faith, or whether they were wanton or reckless, are questions of fact for a jury to consider at trial" and that appellants have not demonstrated that they were

entitled to judgment as a matter of law on appellee's' claims for trespass, conversion and negligence with respect to the issue of immunity.

**{¶55}** Appellants' second assignment of errors is, therefore, overruled.

**{¶56}** We cannot consider appellants' remaining arguments, because R.C. 2744.02(C) limits our jurisdiction to deciding whether the trial court erroneously determined that appellants were not entitled to sovereign immunity. We cannot decide whether the merits of the action otherwise warrant summary judgment. Because R.C. 2744.02(C) does not provide us with jurisdiction to consider issues other than the trial court's sovereign-immunity decision and because the order being appealed is not otherwise final, we lack jurisdiction to consider appellants' other assignments of error.

{¶57}  Accordingly, the judgment of the Delaware County Court of Common Pleas is affirmed.

By: Baldwin, J.

Hoffman, P.J. and

Wise, John, J. concur.