[Cite as *Mayer v. Bodnar*, 2022-Ohio-4705.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| WESLEY W. MAYER | : | JUDGES: |
| | : | |
| | : | Hon. Earle E. Wise, Jr., P.J. |
| Plaintiff-Appellant | : | Hon. William B. Hoffman, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 22 CAE 05 0041 |
| | : | |
| LEE R. BODNAR, ET AL. | : | |
| | : | |
| | : | |
| Defendants-Appellees | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Delaware County Court
of Common Pleas, Case No. 20 CV H
10 0436

JUDGMENT:     AFFIRMED IN PART; REVERSED
AND REMANDED IN PART

DATE OF JUDGMENT ENTRY:     December 27, 2022

APPEARANCES:

For Plaintiff-Appellant:

JOSHUA J. BROWN
5086 North High St., Suite A
Columbus, OH 43214

For Defendants-Appellees:

PAUL-MICHAEL LA FAYETTE
CARA M. WRIGHT
65 E. State St., Suite 2550
Columbus, OH 43125

GARY A. REEVE
5354 Cemetery Road
Hilliard, OH 43026

*Delaney, J.*

{¶1} Plaintiff-Appellant Wesley W. Mayer appeals the April 27, 2022 judgment entry of the Delaware County Court of Common Pleas.

## FACTS AND PROCEDURAL HISTORY

### Orange Township Governance

{¶2} Orange Township, located in Delaware County, Ohio, is governed by four elected officials: three trustees and one fiscal officer. On October 9, 2019, Plaintiff-Appellant Wesley W. Mayer was the Fiscal Officer for Orange Township. Mayer was appointed as the Fiscal Officer in September 2018. He was up for re-election in November 2019, for a four-year term starting April 1, 2020.

{¶3} Non-elected employees manage the general operations of Orange Township. On October 9, 2019, Defendant-Appellee Lee R. Bodnar was the Township Administrator.

### Car Trouble

{¶4} On October 9, 2019, Mayer was driving a rental car because his personal vehicle was recently in an accident. While at an intersection on U.S. State Route 23 in Orange Township, Mayer's rental vehicle ran out of gas and stopped, blocking the traffic at the intersection. Mayer was not conducting Orange Township business when the rental car stalled.

{¶5} After the rental car stalled, Mayer first called the Orange Township Fire Chief for assistance. The Fire Chief was unable to assist Mayer. Mayer next called Aaron James, the Orange Township Roads Superintendent, for assistance. James testified in his April 14, 2021 deposition as to his recollection of the exchange with Mayer:

Q. So October 9th, 2019, did you get a call from Wes Mayer?

A. Yes.

Q. And what did Wes say on the call?

A. He said he was in a rental car, he was broke down, thinks he ran out of gas on 23 * * *. I said, I'll come down and see if I could help you out.

Q. Okay. Did he ask you to come down?

A. Yes, could you help – he asked if I could help him.

Q. Okay. And do you – do you have a strong recollection of the specific wording that you just talked about?

A. Yes. When I answered the phone, Wes said, do you know who this is? This is Wes. Can you help me out? I'm broke down on the side of the road in the rental car. I don't know if that's the exact wordage that he said to me, but that was – you know, that was the gist of it, can you come help.

Q. Okay.

A. So I was going to help – I was going to help anybody that worked for the township.

Q. How long do you think the conversation lasted?

A. Probably maybe a minute, if that.

(James Depo., T. 8-9).

{¶6} James and an Orange Township employee drove to the intersection in an Orange Township vehicle with one to two gallons of gasoline. When they got to the intersection, they observed Mayer outside of his vehicle, attempting to direct traffic around the stalled rental vehicle. James put gas in the rental vehicle, which started immediately,

allowing Mayer to drive to a gas station. James remained at the intersection to clear the traffic congestion.

{¶7} On October 11, 2019, Mayer wrote Orange Township a check for $40.00 to reimburse the township for any expenses related to his rental car difficulties.

**Township Administrator Investigation of the October 9, 2019 Incident**

{¶8} Unbeknownst to Mayer, the Orange Township Human Resources Communications Manager, Amanda Sheterom, was in the office with the Fire Chief when Mayer called the Fire Chief for assistance. When she went to lunch, Sheterom observed Mayer's rental car stalled on Route 23 and Mayer being aided by Orange Township employees in an Orange Township vehicle. The Human Resources Communications Manager informed Bodnar, the Township Administrator, what she observed.

{¶9} Bodnar contacted the Fire Chief for a summary of his conversation with Mayer and asked the Fire Chief to submit a statement to that effect.

{¶10} After James returned to his office on October 9, 2019, he was called to Bodnar's office for a meeting with him and Sheterom. Bodnar asked James what happened with Mayer on Route 23. James related the incident to Bodnar and the Human Resources Director. James did not see any recording devices while he told the story. Bodnar then asked James to write and sign a statement about the October 9, 2019 incident.

**The James Recording**

{¶11} Bodnar recorded the meeting with James on Bodnar's personal cell phone (hereinafter "James Recording"). Bodnar used his personal cell phone to make the recording because it was an Apple 10 with better technology than the Township's cell

phones. At some point in time, Bodnar downloaded the James Recording to his personal iTunes account. At some point of time, while in his Orange Township office, Bodnar downloaded the James Recording from his personal iTunes account and burned it onto two CDs.

{¶12} Bodnar could not remember when he burned the CDs or what he did with the CDs. Bodnar's employment as Township Administrator was terminated without cause on January 21, 2020. He remembered cleaning out his office and thought he gave the CDs to Sheterom. Orange Township eliminated the Human Resources Communications position in May 2020.

### Orange Township Trustee Special Meeting

{¶13} On October 10, 2019, the Township notified the public that a special meeting would be held on October 11, 2019.

{¶14} At the October 11, 2019 special meeting, the Defendant-Appellant Orange Township Board of Trustees, Deborah S. Taranto, Ryan F. Rivers, and Lisa Knapp, went into executive session. Bodnar and Sheterom were invited to the session. Mayer attended the special meeting but was not invited to the executive session.

{¶15} After the executive session, the Trustees resumed the public meeting. The public meeting is recorded with audio and video. The video recording is uploaded to YouTube, which Deborah Taranto testified in her deposition that the recording of the meeting and the upload to YouTube happened at the same time. (Taranto Depo, T. 23). The following occurred at the October 11, 2019 special meeting:

**RR (Ryan F. Rivers)** This meeting's adjourned. (Gavel)

**LK (Lisa Knapp)** You take that back.

* * *

**LK** You have no legal right. We're still in session. You need a second to adjourn the meeting. You have no legal right. We're going to continue * * * You did not adjourn the meeting. You must have a second to adjourn the meeting. That's Roberts Rules of Order. You have no legal right whatsoever to adjourn a meeting without a second. That's Roberts Rules of Order.

* * *

**LK** So, we are going to continue. We have to have a second.

**RR** We never have a second to adjourn a meeting.

* * *

**LB (Lee Bodnar)** I understand, Mr. Chairman. What does the board wish of me? I'm being told to shut off things.

* * *

**LK** We are going to keep going and we are going to continue.

**RR** That's the way it has been. *(interrupted and talked over by LK). RR proceeded to leave the building*

**LK** You must have a second to adjourn the meeting. So, it's come to our attention that two days ago, on Wednesday, October 9th, an employee was called when he was on official duty working for the Township. Mr. Mayer contacted him and asked him to meet him and provide him with gas because he had run out of gas in his personal vehicle while on a personal errand. He tried to call several employees. He ended up getting one employee. He said to him that he had run out of gas and he needed him to

bring gas immediately. He even said, "Do you know who I am?" to this employee. I believe this is a violation of the law. I believe it is a violation of the Ethics Law. I'm going to see this sent to the Ethics Commission. I believe this is an abuse of authority. He was also using a Township vehicle, gas, and 2 employees arrived. So, he was using all three of those items for his own personal benefit without authorization from the board or authorization from Lee (Bodnar) who *unintelligible*. These employees work for the board of trustees and Mr. Bodnar. They do not work for the fiscal officer. Both of Mr. Mayer's employees were present at the building and he did not contact them, which I don't understand and, Mr. Mayer, have you paid the gas back for that?

**WM (Wesley Mayer)** I have not yet, but I indicated that I would when they came to assist me.

**\* \* \***

**LK** I'm going to make a motion for Mr. Bodnar to contact the Ethics Commission and file this on behalf of 2 trustees.

**DT (Deborah S. Taranto)** It was my understanding in Executive Session that a decision had to be made in public, that we couldn't make a decision in Executive and the only way to do that would be in Public and when a situation is brought from an employee to us, we can't ignore it. So, I second.

**WM** You could have asked me into executive session to explain what happened rather than *(cut off by LK).*

**LK** OK. Let's go back into Executive Session so you can explain. I make a motion to go into executive session.

**WM** *(Rises from seat)* I'm not going to attend.

**LK** Why not?

**WM** I'm finished with this. *(as he left)* And I'm finished with you. *(He left the room.)*

\* \* \*

**LK** I'm very…I have to absolutely have to put a stop to the fiscal officer instructing our employees who are Mr. Bodnar's employees. Just like his employees do not work for us, our employees do not work for the fiscal officer. I'm really disappointed that this happened. (To LB) so you will keep us posted?

**LB** I will.

**LK** I make a motion to adjourn.

**DT** Second

**LK** Meeting adjourned. *(There was no vote on the motion to adjourn.)*

(Ex. 4, Mayer Response to Summary Judgment, March 4, 2022).

{¶16} Approximately 30 minutes after the adjournment of the October 11, 2019 special meeting, Mayer averred that he was contacted by reporters from the Columbus Dispatch and the Delaware Gazette for a statement. (Mayer Aff., ¶ 12). He made a statement to the newspapers, which published articles on October 12, 2019. The Columbus Dispatch article was entitled, "Empty gas tank fuels debate in race of Orange

Township fiscal officer." The Delaware Gazette article was entitled, "Trustees approve filing ethics complaint." (Ex. 5).

### Ohio Ethics Commission

{¶17} On October 15, 2019, Bodnar contacted the Ohio Ethics Commission ("OEC") by phone requesting its opinion of the October 9, 2019 incident. The OEC advised that it required the Township to complete and submit an allegation form.

{¶18} Mayer self-reported the October 9, 2019 incident to the OEC on October 17, 2019.

{¶19} On October 21, 2019, the Orange Township Trustees held its regularly scheduled meeting. At the meeting, Trustee Knapp made a motion to direct Bodnar to file the forms with the OEC about the October 9, 2019 incident. The motion passed with Trustee Knapp and Trustee Taranto voting in favor and Trustee Rivers voting against.

{¶20} On October 28, 2019, Bodnar filed the confidential allegation form with the OEC regarding potential Ethics law violations by Mayer. Bodnar attached statements from himself, Aaron James, the Orange Township Fire Chief, and the Human Resources Communications Manager. In the confidential OEC allegation form, Bodnar further stated,

**3. Summary of Facts to the Allegation:**

* * *

I immediately contacted Mr. Aaron James, Road Maintenance Manager, and requested he come to my office. * * * He shared that Mr. Mayer called him on his work cell phone and said "This is Wes Mayer, do you know who I am?" Mr. James acknowledged that he did, and Mr. Mayer said "I think I

might be out of gas in my rental vehicle, can you come down and help me at 5-Guys and 23." * * *

I chose to record this conversation with Mr. James and Ms. Sheterom on my cell phone.

* * *

**5. Are you aware of the existence and location of any other relevant evidence?**

I brought this matter to the attention of the Board of Orange Township Trustees in a special meeting seeking their direction.

{¶21} On October 21, 2019, the OEC sent notification to Bodnar that it had received the allegation form for its review.

<strong>Fiscal Officer Election Results</strong>

{¶22} The Orange Township Fiscal Officer is an elected position. In October 2019, Mayer was running against Lisa Kraft for the position of Fiscal Officer, with the term to begin on April 1, 2020. Election day was on November 5, 2019.

{¶23} On November 4, 2019, Lisa Kraft published an online campaign advertisement in the Delaware Gazette that stated the following:

Over the last few weeks I've had many residents ask about the open investigation with the Ohio Ethics Commission regarding our current fiscal officer. From what I've learned from the trustee meetings, several employees brought the incident to the attention of the Township administrator, including the fact that he said "Do you know who I am?" when asking for their help, after he ran out of gas on SR 23 in front of Wendy's.

> There are strict ethics guidelines for elected officials and public employees. An elected official should not receive special roadside service when no other taxpayer receives the same roadside service. I also find it concerning that he has not attended any township meetings since the incident. Whatever the legalities are or might be, I think we can all agree that it is an overreach and abuse of authority and his position period now is your chance to elect an ethical responsible and trustworthy candidate to handle your tax dollars. Please cast your vote tomorrow for Lisa Kraft!

(Mayer Aff., ¶ 22, Ex. 11).

{¶24} Mayer lost the election for Fiscal Officer to Lisa Kraft.

**Result of OEC Investigation**

{¶25} On March 20, 2020, Orange Township received notice from the OEC that it had completed its investigation based on the allegation forms. The notice stated:

> After thoroughly [sic] the documents and materials you forwarded, the Ethics Commission has determined to not prioritize this matter as an investigation. Factors relevant to this decision include: the value of item solicited was less than $50, there was no allegation that this was a continuing practice by Mr. Mayer and Mr. Mayer is no longer with the Township.

(Ex. 9).

{¶26} The OEC also notified Mayer on March 20, 2020 that it determined to not prioritize the matter as an investigation.

**Mayer's Public Records Request**

{¶27} Bodnar's employment as Township Administrator was terminated on January 21, 2020. As Township Administrator, Bodnar was responsible for responding to public records requests. After Bodnar's termination, Orange Township Trustee Ben Grumbles responded to public records requests. Trustee Grumbles took his seat on the Board of Trustees on January 1, 2020.

{¶28} On February 23, 2020, Mayer emailed Orange Township Trustee Ben Grumbles and asked if he had found the James Recording. Trustee Grumbles responded that he did not have access to Bodnar's computer. (Ex. 2). On March 28, 2020, Mayer sent an email to Trustee Grumbles stating he was officially requesting a copy of the James Recording. If it could not be located, he would file a complaint that Bodnar destroyed a public record and filed a false report with the OEC. (Ex. 2). Trustee Grumbles responded by email on March 28, 2020, stating that after a search of Bodnar's computer, he did not find the James Recording and if Mayer wished to file a complaint, he was free to do so. (Ex. 2).

{¶29} On April 4, 2020, Mayer submitted an email to Trustee Grumbles making a formal request of any and all public records in the Township's possession relating to the October 9, 2019 incident, including the James Recording. Trustee Grumbles acknowledged receipt of the request on April 6, 2020.

{¶30} On April 20, 2020, Trustee Grumbles responded to Mayer's public records request. The email stated in pertinent part:

Unfortunately, I am unable to locate the audio recording you requested. It

is not on the cell phone the administrator utilized. The Sheriff's Department

performed an extensive search of the phone and found no audio recordings through using Cellebrite recovery software per Detective Savage. I also searched Mr. Bodnar's computer, I had Delaware County IT attempt a restoration of deleted content, and still unable to find any recording. If Mr. Bodnar claimed to have a recorded record associated with the Ethics violation, it is not in a place I can recover and provide it. I apologize for this inconvenience.

{¶31} In a follow-up email sent on May 11, 2020, Trustee Grumbles stated the Township was continuing to search for the James Recording.

**Lawsuit**

{¶32} On October 1, 2020, Mayer filed a complaint in the Delaware County Court of Common Pleas naming Bodnar and the Orange Township Board of Trustees as defendants. The complaint named the Trustees as Ryan Rivers, Deborah S. Taranto, and R. Benjamin Grumbles. In Count One of the complaint, Mayer alleged the actions of Bodnar and the Trustees in relation to the October 9, 2019 incident were defamation. In Count Two of the complaint, Mayer alleged "Unauthorized Destruction or Failure to Produce Public Record" in violation of R.C. 149.351. In Count Three, Mayer alleged intentional infliction of emotional distress by Bodnar and the Trustees.

{¶33} Bodnar and the Trustees answered the complaint.

**Discovery of the James Recording**

{¶34} Bodnar averred the first time he became aware of Mayer's public records request, specifically as to the James Recording, when he was served with Mayer's complaint. (Bodnar Aff., ¶ 13). After learning in the complaint that the Township had not

located the two CDs where he copied the James Recording and provided to the Human Resources Communications Manager, Bodnar provided a copy of the James Recording from his personal cellphone to his counsel. (Bodnar Aff., ¶ 16). Correspondence from Bodnar's counsel to Mayer's counsel showed that Mayer's counsel received a copy of the James Recording. (Bodnar Aff., ¶ 17).

## Motion for Summary Judgment

{¶35} Bodnar and the Trustees filed a motion for summary judgment on January 4, 2022. In their joint motion, they argued that (1) Mayer failed to assert any claims against the Trustees in their individual capacities; (2) the Trustees were immune from liability under R.C. 2744.02; and (3) Mayer's claims for defamation, forfeiture, and intentional inflection of emotional distress failed as a matter of law.

{¶36} Mayer filed his response to the motion to summary judgment on March 24, 2022. In his response, he dismissed his claim for intentional infliction of emotional distress.

{¶37} Bodnar and the Trustees filed a reply on March 31, 2022.

## Judgment Entry Granting Summary Judgment

{¶38} On April 27, 2022, the trial court granted the motion for summary judgment filed by Bodnar and the Trustees. The trial court first found that Bodnar, as Township Administrator, and the Trustees were immune from Mayer's defamation claim pursuant to R.C. 2744.02. Because defamation was an intentional tort, the trial court found the Trustees were immune from liability based on the Township's status as a political subdivision. There were no exceptions to its immunity because at the time of the October 9, 2019 incident, Mayer was a candidate for public office and therefore, a public figure.

The trial court further found there was no genuine issue of material fact that statutory immunity extended to Bodnar, as the Township Administrator. He was acting within his scope of employment when he filed the OEC allegation form because he was instructed to do so based on a majority vote by the Trustees. The trial court saw no proof of malicious purpose or bad faith by Bodnar when he filed the OEC allegation form, other than Mayer's mere speculation as to Bodnar's motivations. The trial court did not analyze the merits of Mayer's defamation claim because it found the claims were barred by statutory immunity.

{¶39} In Count Two of his complaint, Mayer asserted that Bodnar and the Trustees improperly disposed of or transferred a public record, the James Recording, in violation of R.C. 149.351(A). The trial court characterized Mayer's claim as one of forfeiture pursuant to R.C 149.351 because Mayer admitted that he ultimately received the James Recording in the course of litigation and he did not assert injunctive relief as a remedy in his complaint. As one of the elements under the statute, the plaintiff must establish they were aggrieved by the improper disposal. *See Rhodes v. City of New Philadelphia*, 129 Ohio St.3d 304, 2011-Ohio-3279, 951 N.E.2d 782, ¶ 16. The trial court found reasonable minds could only conclude that Mayer was not aggrieved. Mayor had obtained a copy of the public record at issue, the James Recording, from another source. Without the James Recording, Mayer argued he could not scrutinize and evaluate the Trustees' decision to file the OEC complaint. The trial court found that Mayer received a copy of the James Recording and he suffered no damages because the OEC took no adverse action against him before he received the James Recording. Because Mayer was not an aggrieved party, the trial court granted the motion for summary judgment on the forfeiture claim.

{¶40} It is from this judgment entry that Mayer now appeals.

## ASSIGNMENTS OF ERROR

{¶41} Mayer raises two Assignments of Error:

{¶42} "I. THE TRIAL COURT ERRED BY HOLDING THAT THE RECORD CONTAINS SUFFICIENT EVIDENCE, SUCH THAT DEFENDANT-APPELLEES ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF-APPELLEE'S DEFAMATION CLAIM.

{¶43} "II. THE TRIAL COURT ERRED IN HOLDING THAT PLAINTIFF-APPELLANT MAYER IS NOT ENTITLED TO FORFEITURE."

## ANALYSIS

### Standard of Review

{¶44} Mayer's two Assignments of Error argue the trial court erred when it granted summary judgment in favor of Bodnar and the Trustees.

{¶45} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 36, 506 N.E.2d 212 (1987). As such, this Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).

{¶46} Civ.R. 56 provides summary judgment may be granted only after the trial court determines: 1) no genuine issues as to any material fact remain to be litigated; 2) the moving party is entitled to judgment as a matter of law; and 3) it appears from the evidence that reasonable minds can come to but one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary

judgment is made, that conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 364 N.E.2d 267 (1977).

{¶47} It is well established the party seeking summary judgment bears the burden of demonstrating no issues of material fact exist for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment is delineated in *Dresher v. Burt*, 75 Ohio St.3d 280 at 293, 662 N.E.2d 264 (1996): "* * * a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." The record on summary judgment must be viewed in the light most favorable to the opposing party. *Williams v. First United Church of Christ*, 37 Ohio St.2d 150, 309 N.E.2d 924 (1974).

**I.**

{¶48} In his first Assignment of Error, Mayer contends the trial court erred when it found that Bodnar was entitled to statutory immunity on his claim for defamation. We note that in Count One of his complaint, Mayer brought claims of defamation against Bodnar and the Trustees. When bringing a civil claim against a political subdivision, often times the first hurdle to overcome is the issue of statutory immunity. On April 27, 2022, based on its analysis of statutory immunity, the trial court granted summary judgment in favor of both Bodnar and the Trustees on Mayer's claims for defamation. Mayer, in his appeal of the April 27, 2022 judgment entry, only raises the argument that the trial court erred in granting summary judgment in favor of Bodnar. Mayer does not engage in any argument or cite to any law as to whether the trial court erred when it determined the Trustees were entitled to statutory immunity on his claim for defamation. As such, we limit our analysis to Mayer's defamation claim against Bodnar. *See* App.R. 16.

**Defamation**

{¶49} "Defamation is a false publication that injures a person's reputation." *Betzko v. Mick*, 12th Dist. No. CA2021-08-018, 2022-Ohio-999, 187 N.E.3d 18, 2022 WL 899903, ¶ 16 citing *Ebbing v. Stewart*, 12th Dist. Butler No. CA2016-05-085, 2016-Ohio-7645, 2016 WL 6602228, ¶ 12; *Jackson v. Columbus*, 117 Ohio St.3d 328, 2008-Ohio-1041, 883 N.E.2d 1060, ¶ 9; *Welling v. Weinfeld*, 113 Ohio St.3d 464, 2007-Ohio-2451, 866 N.E.2d 1051, ¶ 53 ("publication" for defamation purposes is a word of art, which includes any communication by the defendant to a third person).

{¶50} To establish defamation, the plaintiff must show (1) a false statement of fact was made, (2) that the statement was defamatory, (3) the statement was published, (4)

the plaintiff suffered injury as a proximate result of the publication, and (5) the defendant acted with the requisite degree of fault in publishing the statement. *Am. Chem. Soc. v. Leadscope, Inc.*, 133 Ohio St.3d 366, 2012-Ohio-4193, 978 N.E.2d 832, ¶ 77, citing *Pollock v. Rashid*, 117 Ohio App.3d 361, 368, 690 N.E.2d 903 (1996). "Defamation can take the form of libel or slander. Libel refers to written or printed defamatory words and slander generally refers to spoken defamatory words. *Matikas v. Univ. of Dayton*, 152 Ohio App.3d 514, 2003-Ohio-1852, 788 N.E.2d 1108, ¶ 27.

{¶51} In Ohio, the tort of defamation may be either negligent or intentional, depending on the context. *Price v. Austintown Local School Dist. Bd. of Edn.*, 178 Ohio App.3d 256, 2008-Ohio-4514, 897 N.E.2d 700, ¶ 25 (7th Dist.). Mayer concedes in his appellate brief that he is a public figure. (Appellant's Brief, p. 8). "To establish defamation of a public figure, a complainant must also establish that the defendant acted with actual malice." *Ackison v. Gergley*, 2022-Ohio-3490, 198 N.E.3d 139, ¶ 35 (5th Dist.) quoting *Lansky v. Brownlee*, 8th Dist. No. 105408, 2018-Ohio-3952, 111 N.E.3d 135, ¶ 23. Actual malice means that the statement was made "with knowledge of falsity or a reckless indifference to their truth." *Murray v. Chagrin Valley Publishing Co.*, 2014-Ohio-5442, 25 N.E.3d 1111, ¶ 30 (8th Dist.). The burden is on Mayer to establish the requisite degree of fault, i.e. that the statements were made with knowledge that the statements were false or with reckless disregard of whether they were false or not. *Daubenmire v. Sommers*, 12th Dist. No. CA2003-03-014, 156 Ohio App.3d 322, 2004-Ohio-914, 805 N.E.2d 571, 2004 WL 369034, ¶ 90 citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–280, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Sufficient evidence must exist to permit the

conclusion that the defendant in fact had serious doubt as to the truth of the statements. *Id.*

**Statutory Immunity and the Public Employee**

{¶52} In Count One of his complaint, Mayer's claim of defamation against Bodnar is predicated on the OEC allegation form completed by Bodnar. He states in the complaint:

> 63. Bodnar wrote, in the OEC Allegation Form referred herein (Exhibit 1) that he had a recording of his interview with Aaron James, in which, James allegedly inferred that Mayer used his position as the Township's Fiscal Officer to get a special favor from a Township employee by saying, "do you know who I am?."
>
> 64. The Defendant's actions constitute defamation because he was part of a scheme, acting as an agent of Orange Township, to create and submit a fraudulent Allegation Form to the OEC, so that it could then be used by himself and others to damage Plaintiff Mayer personally and professionally. Bodnar was not only part of this scheme, he was the primary driver behind it and personally created the false OEC report and personally sent false allegations to the press and others around Orange Township.

(Mayer's Complaint, Oct. 1, 2020). There is no factual dispute these alleged activities occurred while Bodnar was employed by Orange Township as the Township Administrator.

{¶53} There is no dispute that Orange Township is a political subdivision pursuant to R.C. 2744.01(F). R.C. 2744.02(A)(1) establishes governmental immunity for political

subdivisions and their employees: "For purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."

{¶54} Whether a political subdivision is entitled to this statutory immunity is a question of law for a court's determination. *Dover Chem. Corp. v. Dover*, 2022-Ohio-2307, 192 N.E.3d 559, ¶ 34 (5th Dist.) citing *M.F. by Karisma v. Perry Cnty. Children Services*, 5th Dist. Perry No. 19-CA-0003, 2019-Ohio-5435, 2019 WL 7369252, ¶ 30 citing *Henney v. Shelby City School Dist.*, 5th Dist. Richland No. 2005 CA 0064, 2006-Ohio-1382, 2006 WL 747475, ¶ 28, citing *Conley v. Shearer*, 64 Ohio St.3d 284, 291, 595 N.E.2d 862 (1992). A three-tiered analysis is required to determine whether a political subdivision is immune from tort liability pursuant to R.C. Chapter 2744. *Gattrell v. Utica*, 2016-Ohio-792, 63 N.E.3d 461, ¶¶ 36-37 (5th Dist.) citing *Greene Cty. Agricultural Soc. v. Liming*, 89 Ohio St.3d 551, 556–557, 733 N.E.2d 1141 (2000); *Smith v. McBride*, 130 Ohio St.3d 51, 2011-Ohio-4674, 955 N.E.2d 954, ¶ 13–15. The first tier is the general rule that a political subdivision is immune from liability incurred in performing either a governmental or a proprietary function. *Greene Cty. Agricultural Society*, at 556–557, 733 N.E.2d 1141; R.C. 2744.02(A)(1).

{¶55} The immunity under the first tier, however, is not absolute. R.C. 2744.02(B); *Cater v. Cleveland*, 83 Ohio St.3d 24, 697 N.E.2d 610 (1998). "The second tier of the

analysis requires a court to determine whether any of the five listed exceptions to immunity listed in R.C. 2744.02(B) apply to expose the political subdivision to liability." *Id.*

{¶56} If the political subdivision is liable under the second tier, the third tier of the analysis determines whether immunity can be revived because the political subdivision is entitled to a defense or qualified immunity under R.C. 2744.03(A). *Vasquez-Cromer v. City of Toledo*, 6th Dist. Lucas No. L-18-1266, 2019-Ohio-5149, 2019 WL 6817388, ¶ 9.

{¶57} Individual employees of a political subdivision are immune from civil actions to recover damages for "injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function." R.C. 2744.02(A)(1). The political subdivision employee's defense of immunity is subject to exceptions:

(6) In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and 3746.24 of the Revised Code, the employee is immune from liability unless one of the following applies:

(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;

(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;

(c) Civil liability is expressly imposed upon the employee by a section of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, because that section

provides for a criminal penalty, because of a general authorization in that
section that an employee may sue and be sued, or because the section
uses the term "shall" in a provision pertaining to an employee.

R.C. 2744.03(A)(6). Mayer does not cite a section of the Revised Code which would impose liability on Bodnar under R.C. 2744.03(A)(6)(c). Thus, the only two exceptions relevant to this appeal are the exceptions under R.C. 2744.03(A)(6)(a) and (b).

{¶58} The trial court first analyzed Mayer's claims under R.C. 2744.03(A)(6)(a) to determine whether Bodnar's acts were manifestly outside the scope of employment or official responsibilities thereby removing Bodnar's statutory immunity protections as a political subdivision employee. R.C. Chapter 2744 does not define the type of employee acts that fall "manifestly outside the scope of employment or official responsibilities" under R.C. 2744.03(A)(6)(a). *Curry v. Blanchester*, 12th Dist. Clinton No. CA2009-08-010, 2010-Ohio-3368, 2010 WL 2807948, ¶ 30. However, Ohio courts have generally drawn from agency-law principles to hold that "conduct is within the scope of employment if it is initiated, in part, to further or promote the [employer]'s business." *Id*. quoting *Jackson v. McDonald*, 144 Ohio App.3d 301, 307, 760 N.E.2d 24 (5th Dist.2001); *Chesher v. Neyer* (C.A.6, 2007), 477 F.3d 784, 797. "In the context of immunity, '[a]n employee's wrongful act, even if it is unnecessary, unjustified, excessive or improper, does not automatically take the act manifestly outside the scope of employment.'" *Id*. quoting *Jackson* at 307, 760 N.E.2d 24. "It is only where the acts of state employees are motivated by actual malice or other [situations] giving rise to punitive damages that their conduct may be outside the scope of their state employment." *Id*.

{¶59} The Civ.R. 56 evidence in this case sets forth the chain of events that resulted in Bodnar filing an OEC allegation form, which Mayer contends is the basis of his defamation claim. On October 9, 2019, while driving his personal rental vehicle on a personal errand, Mayer ran out of gas. Mayer chose to call the Orange Township Fire Chief and then Aaron James, the Orange Township Roads Superintendent, for assistance. Sheterom was aware that Mayer contacted the Orange Township Fire Chief and she personally observed the Orange Township Roads Superintendent and another Township employee providing Mayer assistance with his personal vehicle. Sheterom informed Bodnar, the Township Administrator, what she observed. Bodnar asked the Fire Chief and James for further information.

{¶60} At the October 11, 2019 special meeting called by the Trustees, Bodnar informed the Trustees in executive session about the October 9, 2019 incident. During the public session of the meeting, which was televised on YouTube, Trustee Knapp spoke about the October 9, 2019 incident.[1] Trustee Knapp made a motion for Bodnar to contact the OEC about the October 9, 2019 incident. Trustee Taranto seconded the motion. Bodnar first contacted the OEC on October 15, 2019.

{¶61} At the October 21, 2019, the Trustees held their regularly scheduled meeting where they voted 2-1 to direct Bodnar to file a report with the OEC about the

---

[1] In his appellate brief, Mayer makes repeated references to the allegedly willful misconduct of the Human Resources Communications Manager and Trustee Knapp. He argues a jury could reasonably conclude that the acts of Bodnar, Trustee Knapp, and Sheterom could constitute willful and wanton misconduct. As noted by the trial court in its April 27, 2022 judgment entry, "Mayer dedicates a lengthy portion of his argument to asserting the ways in which Knapp acted maliciously and in bad faith. * * * Knapp, however, is not a party in this case. * * * Thus, I decline to analyze whether Mayer could hold Knapp personally liable for defamation." (Judgment Entry, Apr. 27, 2022). Mayer has not named the Human Resources Communications Manager or Trustee Knapp as defendants in his complaint for defamation. We likewise decline to address Mayer's claims against unnamed parties. Further, the trial court granted summary judgment in favor of the Trustees on Mayer's claim based on statutory immunity. Mayer has not raised this portion of the trial court's judgment as part of his Assignment of Error on appeal.

October 9, 2019 incident. Bodnar filed the OEC allegation form on October 28, 2019 pursuant to the Trustee's direction.

{¶62} We agree with the trial court to find that reasonable minds can only conclude that when Bodnar contacted the OEC regarding the October 9, 2019 incident, it was at the direction of the Trustees as part of his duties as Township Administrator. There is no Civ.R. 56 evidence in the record to demonstrate that Bodnar contacted the OEC before he was directed to by the Trustees. He was acting within the scope of his employment as Township Administrator when he followed the direction of his employers to file the OEC allegation form regarding the October 9, 2019 incident.

{¶63} While Mayer claims Bodnar engaged in a defamatory act when he *filed* the OEC allegation form, the true thrust of Mayer's argument is that the claims in the OEC allegation form were fraudulently generated by Bodnar out of a malicious purpose, in bad faith, or in a wanton or reckless manner.

{¶64} Pursuant to R.C. 2774.03(A)(6)(b), the public employee is immune from liability unless the employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner. "Malicious purpose" is the "willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through * * * unlawful or unjustified conduct." *O'Farrell v. Harlem Twp. Bd. of Trustees*, 5th Dist. Delaware No. 18 CAH 08 0059, 2019-Ohio-1675, 2019 WL 1976090, ¶ 51 quoting *Schoenfield v. Navarre*, 164 Ohio App.3d 571, 2005–Ohio–6407, 843 N.E.2d 234 at paragraph 22. (6th Dist.). "Bad faith" connotes a "dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." *Id.* "Wanton misconduct is the failure to exercise any

care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result." *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, 2012 WL 6198607, ¶ 33. "Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Id.* at ¶ 34.

{¶65} Mayer points to the deposition of Trustee Ryan Rivers who testified there was a "personal hostility" between Bodnar and Rivers and the Township Operations Manager who said Bodnar bullied Mayer. (Rivers Depo., p. 15; Lewis Depo., p. 13). Mayer argues evidence of Bodnar's malicious purpose and bad faith arises because Bodnar's hostilities towards Mayer led Bodnar to initiate the investigation. He states Bodnar weaponized Mayer's question to James when he relayed James' statement to the Trustees at the special meeting. Mayer states his question to James was then used against him by Trustee Knapp at the public hearing. Mayer claims Bodnar's malicious purpose was further evidenced when the press contacted Mayer 30 minutes after the October 11, 2019 special meeting and the campaign message generated by his opponent referencing the October 9, 2019 incident, allegedly costing him the election for Fiscal Officer.

{¶66} Upon consideration of the second element, the trial court found Mayer presented speculation, not Civ.R. 56 evidence, in an attempt to establish a genuine issue of material fact that Bodnar acted with malicious purpose, in bad faith, or in a wanton or reckless manner when he completed and filed the OEC allegation form. Our de novo review of the evidence establishes that Bodnar, as Township Administrator, is entitled to

political subdivision immunity from Mayer's claim of defamation of a public figure. First, the Civ.R. 56 evidence in this case shows that Bodnar did not file the OEC allegation form until he was directed to by the Trustees. Second, the content of the OEC allegation form substantially conforms to Mayer's recounting of the October 9, 2019 incident. (Mayer Aff., ¶ 3; Ex. 1).

{¶67} The Human Resources Communications Manager informed Bodnar of the October 9, 2019 incident, the facts of which are not in controversy. Mayer makes no argument that the duties of the Township Administrator do not include monitoring the use of Township resources. As part of his investigation, Bodnar contacted James, who gave a statement about his interaction with Mayer. Mayer concedes in his affidavit that during his interaction with James on October 9, 2019, he asked James, "do you know who I am" when he called James to ask for assistance with his rental car. (Mayer Aff., ¶ 25). Mayer makes no contention that James lied about their interaction.

{¶68} Bodnar, during executive session of the special meeting and on the OEC allegation form, provided James' statement, which Mayer concedes was accurate. Trustee Knapp, during the public session streamed on YouTube, relayed the details of the October 9, 2019 incident. As noted, the trial court granted summary judgment in favor of the Trustees, which Mayer has not raised as error in this appeal, and he did not name Trustee Knapp as an individual defendant.

{¶69} In this case, we agree with the trial court that Mayer's claims of malicious purpose, bad faith, or acts of reckless or wanton misconduct by Bodnar were based on speculation of Bodnar's malicious purpose towards Mayer. "Mere speculation or possibility is not enough to defeat a summary judgment motion." *Jacobs v. Dye Oil, LLC*,

2019-Ohio-4085, 147 N.E.3d 52, 2019 WL 4898488, ¶ 73 (7th Dist.) quoting *Strama v. Allstate Ins.*, 7th Dist. Belmont No. 14 BE 8, 2015-Ohio-2590, 2015 WL 3946373, ¶ 43, citing *Allstate Ins. Co. v. Sears*, 7th Dist. No. 06 BE 10, 2007-Ohio-4977, 2007 WL 2758700, ¶ 74. While the OEC ultimately decided not to open an investigation, there is no genuine issue of material fact that the events of October 9, 2019 occurred as reported in the OEC allegation form. Reasonable minds could only conclude that the exceptions to R.C. 2744.03(A)(6) do not apply to Bodnar's acts or omissions as to the reporting of the October 9, 2019 incident, thereby providing Bodnar with immunity from Mayer's claim of defamation of a public figure.

{¶70} Mayer's first Assignment of Error is overruled.

**II.**

{¶71} In his second Assignment of Error, Mayer contends the trial court erred when it granted summary judgment in favor of Bodnar and the Trustees on his claim under R.C. 9.351(A). We disagree.

{¶72} Mayer asserts that Bodnar and the Trustees improperly disposed of or transferred a public record, the James Recording, in violation of R.C. 149.351(A). The statute reads:

> (A) All records are the property of the public office concerned and shall not be removed, destroyed, mutilated, transferred, or otherwise damaged or disposed of, in whole or in part, except as provided by law or under the rules adopted by the records commissions provided for under sections 149.38 to 149.42 of the Revised Code or under the records programs established by the boards of trustees of state-supported institutions of higher education

under section 149.33 of the Revised Code. Those records shall be delivered by outgoing officials and employees to their successors and shall not be otherwise removed, destroyed, mutilated, or transferred unlawfully.

(B) Any person who is aggrieved by the removal, destruction, mutilation, or transfer of, or by other damage to or disposition of a record in violation of division (A) of this section, or by threat of such removal, destruction, mutilation, transfer, or other damage to or disposition of such a record, may commence either or both of the following in the court of common pleas of the county in which division (A) of this section allegedly was violated or is threatened to be violated:

(1) A civil action for injunctive relief to compel compliance with division (A) of this section, and to obtain an award of the reasonable attorney's fees incurred by the person in the civil action;

(2) A civil action to recover a forfeiture in the amount of one thousand dollars for each violation, but not to exceed a cumulative total of ten thousand dollars, regardless of the number of violations, and to obtain an award of the reasonable attorney's fees incurred by the person in the civil action not to exceed the forfeiture amount recovered.

Accordingly, in order for Mayer to succeed in his civil action for forfeiture pursuant to R.C. 149.351, he must have requested public records, the public office must have been obligated to honor that request, subject to certain exceptions in R.C. 149.43(B), the office must have disposed of the public records in violation of R.C. 149.351(A), and Mayer must

be aggrieved by the improper disposal. *Rhodes v. New Philadelphia*, 129 Ohio St.3d 304, 2011-Ohio-3279, 951 N.E.2d 782, 2011 WL 2652319, ¶ 16.

{¶73} In the present case, the trial court acknowledged that Mayer submitted Civ.R. 56 evidence that demonstrated that Bodnar or the Trustees may have destroyed, damaged, or disposed of the James Recording. The trial court found, however, that Mayer could not establish there was a genuine issue of material fact that he was aggrieved by the violation of R.C. 149.351(A).

{¶74} In his brief to this Court, Mayer argues the trial court erred when it found he was not aggrieved by the Trustees' violation of R.C. 149.351(A); however, Mayer raises three additional arguments that the trial court did not consider whether the Trustees promptly responded to his public records request under R.C. 149.43(B)(1), the Trustees' delay in responding to Mayer's public records request, and the manner in which the Trustees maintained its public records to make them available for public inspection. We have reviewed Mayer's March 24, 2022 response to the motion for summary judgment. Mayer did not raise these three additional arguments to the trial court. The only argument presented to the trial court was, "the Township is liable for failing to produce the records under R.C. 149.351." (Response, Mar. 24, 2022). As a general rule, a litigant who has the opportunity to raise an issue in the trial court, but declines to do so, waives the right to raise that issue on appeal. *Ackison v. Gergley*, 2022-Ohio-3490, 198 N.E.3d 139, ¶ 48 (5th Dist.) citing *The Strip Delaware, LLC v. Landry's Restaurants, Inc.*, 5th Dist. Stark No. 2010CA00316, 2011-Ohio-4075, ¶ 41. Because Mayer failed to make the three additional arguments to the trial court, this Court will not review the additional arguments

on appeal. *Ackison, supra* at ¶ 48 citing *May v. Westfield Village L.P.*, 5th Dist. No. 02-COA-051, 2003-Ohio-5023, ¶ 21.

{¶75} In their motion for summary judgment, Bodnar and the Trustees argued there was no violation of R.C. 149.351(A) because the James Recording was not destroyed, and it was produced. The Civ.R. 56 evidence provided by Bodnar's deposition and Mayer's emails with Trustee Grumbles shows that the James Recording was stored on Bodnar's personal cellphone. Bodnar testified that he downloaded and burned the James Recording onto two CDS, but Trustee Grumbles could not locate the CDs or any copy of the James Recording in the Township's possession when Mayer made his public records request. Bodnar became aware of Mayer's request for the James Recording when he was served with Mayer's complaint. Bodnar provided the James Recording to his attorney, who then provided the James Recording to Mayer in response to a discovery demand. Mayer acknowledged in his affidavit that he received and listened to the James Recording.

{¶76} In its judgment entry, the trial court found there was a genuine issue of material fact whether Bodnar or the Trustees destroyed, damages, or disposed of its copy of the James Recording. Our de novo review of the facts in a light most favorable to Mayer supports the finding there is a genuine issue of material fact whether the Trustees disposed of the public record in violation of R.C. 149.351(A). We move on to consider the remaining element of a claim for forfeiture: whether the plaintiff was aggrieved by the improper disposal of the public record.

{¶77} While the General Assembly requires that a party be "aggrieved" in order to succeed in a civil action for forfeiture pursuant to R.C. 149.351, it did not provide a

statutory definition of "aggrieved." *Rhodes*, 2011-Ohio-3279, ¶ 16. It has been the role of the courts to carve out a definition of "aggrieved" for the purposes of R.C. 149.351. In *Rhodes v. New Philadelphia*, 129 Ohio St.3d 304, 951 N.E.2d 782, 2011–Ohio–3279, ¶ 18, 23–24, 28, respectively, the Supreme Court of Ohio reviewed a decision from this court where a party's objective in requesting a public record was not to obtain the record but to seek a civil forfeiture under R.C. 149.351 for the wrongful destruction of the record. The Court explained its interpretation of the word "aggrieved" under R.C. 149.351:

> "Aggrieved" is commonly defined as "having legal rights that are adversely affected; having been harmed by an infringement of legal rights." Black's Law Dictionary (9th Ed.2009) 77. Thus, in order for Rhodes to be aggrieved, the improper conduct of New Philadelphia must have infringed upon Rhodes's legal rights.
>
> * * *
>
> The same choice is not reflected in R.C. 149.351, as the General Assembly did not make the enforcement mechanism of forfeiture available to "any person." Forfeiture is available only to a person who has been "aggrieved" by the public office's violation. R.C. 149.351(B). We must give effect to every term in a statute and avoid a construction that would render any provision meaningless, inoperative, or superfluous. *Boley v. Goodyear Tire & Rubber Co.*, 125 Ohio St.3d 510, 2010–Ohio–2550, 929 N.E.2d 448, at ¶ 21. We cannot ignore the General Assembly's use of the term "aggrieved," and we conclude that the General Assembly did not intend to impose a forfeiture when it can be proved that the requester's legal rights were not

infringed, because the requester's only intent was to prove the nonexistence of the records.

The requirement of aggrievement indicates that a forfeiture is not available to "any person" who has made a request and discovered that the records were not available due to the public office's violation of R.C. 149.351; it is available only to a person who had made a request with the goal of accessing the public records. If the goal is to seek a forfeiture, then the requester is not aggrieved. The presumption, however, is that a request for public records is made in order to access the records. This presumption is evident in other cases in which this court has construed associated terms of the public-records act. *See, e.g., Kish v. Akron*, 109 Ohio St.3d 162, 2006–Ohio–1244, 846 N.E.2d 811; *State ex rel. Morgan v. New Lexington*, 112 Ohio St.3d 33, 2006–Ohio–6365, 857 N.E.2d 1208.

* * *

The destruction of a public record in violation of R.C. 149.351(A) gives rise to a forfeiture if the requester was "aggrieved" by the destruction.

*State ex rel. Verhovec v. Dennison*, 5th Dist. Tuscarawas No. 2013 AP 12 0062, 2014-Ohio-4847, 2014 WL 5500441, ¶ 16.

{¶78} In this case, there is no factual dispute that Mayer sought the James Recording with the goal of accessing the record itself, not forfeiture. The Civ.R. 56 evidence shows that Mayer began asking the Trustees for a copy of the James Recording on February 23, 2020. The OEC decision was published on March 20, 2020. On April 4, 2020, Mayer submitted an email to Trustee Grumbles making a formal request of any and

all public records in the Township's possession relating to the October 9, 2019 incident, including the James Recording.

{¶79} The Trustees and Bodnar point this Court to case law as to the meaning of "aggrieved" when the party claiming forfeiture has received a copy of the public record from another source. *In State ex rel. Sensel v. Leone*, 12th Dist. Butler No. CA97–05–102, 1998 WL 54392 (Feb. 9, 1998), reversed on other grounds, 85 Ohio St.3d 152, 707 N.E.2d 496 (1999), the Twelfth District Court of Appeals found the relator was aggrieved by the improper disposition of four records. *Id.* at *6. In *Leone*, the relator commenced a mandamus action to compel the production of twelve letters that had been written to a school superintendent. The relator had obtained copies of eight of the letters from sources other than the superintendent and she produced them at trial. She was unable to review the four remaining letters because the superintendent had disposed of them. The court concluded that "a person is 'aggrieved' where the improper disposition of a record infringes upon a person's legal right to scrutinize and evaluate a governmental decision." *Id.* at *6. Because she had received copies of eight of the letters, albeit not from the superintendent, the relator's right to scrutinize the superintendent's decision was only infringed upon by the disposal of the remaining four letters. *Id.* at *6.

{¶80} The First District Court of Appeals relied upon the law espoused in *Leone* when examining whether the Cincinnati Enquirer was an aggrieved party *In State ex rel. Cincinnati Enquirer v. Allen*, 1st Dist. Hamilton No. C-040838, 2005-Ohio-4856, 2005 WL 2249110, ¶¶ 14-16, appeal not allowed, 136 Ohio St.3d 1557, 996 N.E.2d 985, 2013-Ohio-4861. A reporter with the Enquirer sent a written request to the Hamilton County Prosecutor's office seeking records related to a potential sexual harassment lawsuit

against the then county prosecutor. *Id.* at ¶ 2. Among the requested records were two letters, one referring to an internal complaint. *Id.* The Enquirer filed a complaint seeking a writ of mandamus to order the county prosecutor make the requested documents available and the matter was scheduled for a hearing on September 1, 2004. *Id.* at ¶ 4. The county prosecutor did not have the internal complaint to provide under R.C. 149.43. Id. at ¶ 12. At the September 1 hearing, the Enquirer notified the court that it had received the internal complaint from another source. *Id.* at ¶ 6. At a later hearing held pursuant to R.C. 149.351, the trial court found the Enquirer was not an aggrieved party. *Id.* at ¶ 8.

{¶81} On appeal, the Enquirer argued the trial court abused its discretion in not awarding forfeiture as to the internal complaint. *Id.* at ¶ 8. The First District held:

We must first determine whether the Enquirer was aggrieved by the alleged violation of R.C. 149.351. We agree with the Twelfth Appellate District's analysis [in *State ex rel. Sensel v. Leone*] concerning whether a person is aggrieved by the destruction of a public record. * * *

Here, the Enquirer had received a copy of the internal complaint prior to the September 1 hearing. Even though the copy was provided by a source other than the prosecutor's office, the Enquirer's right to scrutinize the governmental response to the sexual-harassment complaint was not infringed upon. Because it was not an aggrieved party, the Enquirer was not entitled to the forfeiture and attorney fees provided in R.C. 149.351(B)(2).

*Id.* at ¶ 15-16.

{¶82} We are required the give effect to the statute's purpose and the customary meaning of the term "aggrieved." *Walker v. Ohio State Univ. Bd. of Trustees*, 10th Dist. Franklin No. 09AP-748, 2010-Ohio-373, 2010 WL 376801, ¶ 26. *Leone* and *Allen* provide this Court with guidance as to the definition of "aggrieved." At its definitive core, a person is "aggrieved by" a violation of R.C. 149.351(A), and therefore is statutorily authorized to commence an action under R.C. 149.351(B), when (1) the person has a legal right to disclosure of a record of a public office, and (2) the removal, destruction, mutilation, transfer, damage, or disposal of the record, not permitted by law, allegedly infringes the right. *Id.*

{¶83} Considering the matter in a light most favorable to Mayer, we find there is a genuine issue of material fact whether he is aggrieved by a violation of R.C. 149.351. The Trustees do not make any argument that Mayer did not have a legal right to the disclosure of a public record. As stated above, the Civ.R. 56 evidence demonstrated reasonable minds could come to differing conclusions as to whether Bodnar or the Trustees destroyed, damaged, or disposed of the James Recording. The next question is whether the removal, destruction, mutilation, transfer, damage, or disposal of the James Recording, not permitted by law, allegedly infringed on Mayer's legal right.

{¶84} Bodnar filed the OEC allegation form on October 28, 2019. Mayer made his first request to the Township for the James Recording on February 23, 2020, while the OEC allegation form was still pending before the OEC. The OEC decision was filed on March 20, 2020. Mayer made his formal public records request for the James Recording on April 4, 2020. His complaint for defamation and forfeiture was filed on October 1, 2020. Mayer did not receive a copy of the James Recording until after his lawsuit was filed

pursuant to a discovery response from Bodnar. He received the James Recording from another source, but not until after the OEC filing was pending, the newspaper articles were published, he lost the election, and he filed his civil complaint. In this case, we cannot conclude as a matter of law that Mayer's legal right was not adversely affected by the Trustees' alleged removal, destruction, mutilation, transfer, damage, or disposal of the James Recording.

{¶85} Mayer's second Assignment of Error is sustained. The judgment as to Count Two of Mayer's complaint is reversed and the matter remanded to the trial court for further proceedings consistent with this Opinion and law.

## CONCLUSION

{¶86} The judgment of the Delaware County Court of Common Pleas is affirmed in part and reversed and remanded in part.

By:  Delaney, J.,

Wise, Earle, P.J. and

Hoffman, J., concur.